UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-cv-24217-WILLIAMS/REID

ALYSE STONE and NEAL BENSON,

    Plaintiffs,

v.

NCL (BAHAMAS) LTD. d/b/a NCL, and
VALLARTA SHORE EXCURSIONS,

    Defendants.
_____/

**REPORT AND RECOMMENDATION ON DEFENDANT
NCL (BAHAMAS) LTD.'S, MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

This matter is before the Court on Defendant NCL (BAHAMAS) LTD ("NCL") Motion to Dismiss the Complaint. [ECF No. 7]. The Honorable Kathleen M. Williams referred the motion to me for a report and recommendation pursuant to 28 U.S.C. § 636. [ECF No. 8]. Plaintiffs Alyse Stone ("Stone") and Neal Benson ("Benson") (collectively referred to as "Plaintiffs") bring four claims against NCL. [ECF No. 1]. NCL argues that Counts I and II should be dismissed because they fail to sufficiently allege that NCL had notice of the risk-creating condition and of Defendant Vallarta's particular incompetence or unfitness, while Counts IV and V should be dismissed because Vallarta is an independent contractor providing shore excursions for which NCL was not responsible. [ECF No. 7]. For the reasons discussed below, I **RECOMMEND** Defendant's Motion to Dismiss Plaintiff's Complaint [ECF No. 7] be **DENIED**.

**I.    Background**

1

According to the allegations in their Complaint, Plaintiffs booked a cruise aboard the NCL's ship Norwegian Bliss. [ECF No. 1 at 6]. After completing the booking, they were "bombarded" by NCL with advertisements for various shore excursions they could purchase. [*Id.*]. After seeing an advertisement on NCL's website, Plaintiffs bought tickets from NCL for a shore excursion called the "ATV Adventure and Village Tour," in Puerto Vallarta, Mexico, which included an ATV Ride. NCL's website described the excursion as follows:

> After a detailed safety orientation, follow your guide in convoy-style, on a drive through Puerto Vallarta and on your way to the off-roads. There is no better way to explore Mexico's countryside than on your own semi-automatic, four-wheeled ATV. While skirting the edges of the Bay of Banderas, ride into the beautiful, yet dusty foothills of the Sierra Madre Mountains. You'll have some free time to explore the grounds before you head back to your ship.

[*Id.* at 6–7].

Plaintiffs allege that they reasonably believed the excursion was operated by NCL "or through an agent/partner of or service provided by NCL" and would not have purchased the excursion otherwise. [*Id*. at 7-8].

When Plaintiffs arrived at the excursion location, a brief information safety orientation was given, but the instructions were "insufficient." [*Id.* at 8]. Plaintiffs allege that the tour guides pressured the group, including Plaintiffs, to increase their speed, although Plaintiffs did not feel comfortable at a slower speed and communicated their preference to the guides. [*Id.*]. Although the road conditions were adequate at the beginning of the tour, "the road conditions worsened and were improperly maintained." [*Id.* at 8–9]. More experienced ATV riders commented on the poor road conditions. Plaintiffs were inexperienced ATV riders. They alleged that a hidden defect on the road caused their ATV to "roll over." [*Id.* at 9]. As a result, Stone suffered a broken leg—for which she required multiple surgeries—and Benson sustained injuries to his head and face. [*Id.*].

Because of the poor road conditions no ambulance could reach the Plaintiffs. Plaintiff Stone was provided "a make-shift splint crafted from freshly cut tree branches" and sent to a local hospital in a transport van. [*Id*. at 9].

The Complaint provides that:

> Based upon the information and documents provided by NCL, the fact that Plaintiffs purchased the subject excursion tickets directly from NCL, and in reliance on the information provided by NCL, Plaintiffs reasonably believed that they had contracted with NCL to provide the "ATV Adventure and Village Tour" including the subject "ATV Ride" excursion and that the subject excursion was either operated by NCL or through an agent/partner of or service provided hired by NCL. Moreover, Plaintiffs trusted that an excursion offered, marketed by, and purchased from NCL, its agent (disclosed or undisclosed), and/or service provider would adhere to the highest safety standards in the industry as represented in promotional and marketing materials.

[*Id*. at 7].

Plaintiffs assert five counts in the Complaint: (1) negligence against NCL; (2) negligent selection and retention of tour operator against NCL; (3) negligence against Vallarta; (4) apparent agency or agency by estoppel against NCL; and (5) joint venture between NCL and Vallarta. [*Id*. 11–25].

## II.     Legal Standard

NCL has moved to dismiss the Complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); [ECF No. 7 at 1]. To survive a 12(b)(6) motion, a complaint must allege sufficient factual matter that, taken as true, states a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The factual allegations are accepted as true and construed in a light most favorable to the plaintiff; conclusory assertions and unwarranted deductions of fact are not." *Worley v. Carnival Corp.*, 21-23501-CIV, 2022 WL 845467, at *1 (S.D. Fla. Mar. 22, 2022) (citing

3

*Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)). "The Eleventh Circuit has endorsed 'a two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Holcomb v. Carnival Corp.*, No. 20-22429-Civ-WILLIAMS/TORRES, 2020 U.S. Dist. LEXIS 186214, at *5 (S.D. Fla. Oct. 6, 2020) (quoting *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)).

### III. General Maritime Principles

"Federal maritime law applies to actions arising from alleged torts committed aboard a ship sailing in navigable waters." *Smolnikar v. Royal Caribbean Cruises Ltd.*, 787 F. Supp. 2d 1308, 1315 (S.D. Fla. 2011) (citing *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1321 (11th Cir.1989)). Further, maritime law applies to those tort actions that arise "at an offshore location [during] a cruise." *Lienemann v. Cruise Ship Excursions, Inc.*, No. 18-21713-CIV, 2018 U.S. Dist. LEXIS 202697, at *5 (S.D. Fla. Nov. 15, 2018) (citing *Ceithaml v. Celebrity Cruises, Inc.*, 739 Fed. Appx. 546, 550 n.4 (11th Cir. 2018)). "[G]eneral maritime law is 'an amalgam of traditional common-law rules, modifications of those rules and newly created rules' drawn from state and federal sources." *Martinez v. Celebrity Cruises*, No. 20-23585-Civ-WILLIAMS/TORRES, 2021 U.S. Dist. LEXIS 4852, at *4 (S.D. Fla. Jan. 8, 2021) (quoting *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864–65 (1986)). Lastly, "[m]aritime law may be supplemented by state law principles so long as [the] application of the state law" is not in conflict with federal maritime law. *Id.*

### IV. Analysis

4

There are two main issues relevant to the motion to dismiss: (1) whether Counts I and II sufficiently pleaded that NCL was on notice of the alleged dangerous condition and of Vallarta's particular incompetence or unfitness and (2) concerning Counts IV and V, whether the Court should consider materials outside the four corners of the Complaint, exhibits to NCL's Motion to Dismiss, which NCL claim contradict Plaintiff's allegations. [ECF No. 7].

### A. Count I-II: Negligence Against NCL & Negligent Selection and Retention of Tour Operator Against NCL

Because Counts I and II are direct liability claims and therefore require notice, the first issue is whether Plaintiffs have adequately pleaded that NCL was on notice of the alleged dangerous condition and of Vallarta's particular incompetence or unfitness. *See Worley v. Carnival Corp.*, 21-23501-CIV, 2022 WL 845467, at *2 (S.D. Fla. Mar. 22, 2022); *Reed v. Royal Caribbean Cruises Ltd.*, 618 F. Supp. 3d 1346, 1357 (S.D. Fla. 2022)).

Decisions in maritime tort cases "rely on general principles of negligence law." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) (quoting *Daige v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980)). The elements of a negligence claim based on a shipowner's direct liability for its own negligence are well settled: "a plaintiff must allege that (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Holland v. Carnival Corp.*, 50 F.4th 1088, 1094 (11th Cir. 2022) (quoting *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1253 (11th Cir. 2014)). "This standard 'requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of [a] risk-creating condition, at least where, as here, the menace is one commonly encountered on land and not clearly linked to nautical adventure.'" *Id.* (quoting *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 721 (11th Cir. 2019)). A defendant has actual notice when the "defendant knows of the

risk creating condition" and has constructive notice "when a dangerous condition has existed for such a period of time that the shipowner must have known the condition was present and thus would have been invited to correct it." *Bujarski v. NCL (Bahamas) Ltd.*, 209 F. Supp. 3d 1248, 1250–51 (S.D. Fla. 2016).

NCL first contends that Plaintiffs' use of "and/or" renders the allegations conclusory. [ECF No. 7 at 4–6]. NCL relies on *Blow v. Carnival Corp.*, No. 22-22587-Civ-Scola, 2023 U.S. Dist. LEXIS 17373 (S.D. Fla. Feb. 1, 2023). In *Blow*, Judge Scola granted Carnival Corporation's motion to dismiss the complaint as a shotgun complaint "because of the Plaintiffs' constant use of 'and/or' phrasing and therefore the inherently confused and disjointed nature of the complaint." *Blow*, 2023 U.S. Dist. LEXIS 17373, at *3–4. Although Plaintiffs concede their Complaint uses the "and/or" conjunction, they deny such use of the conjunction creates confusion or violates Fed. R. of Civ. P. 8(a)(2) by failing to use a "short and plain statement of the claim showing the pleader is entitled to relief." [ECF No. 11 at 9].

Plaintiffs are correct. This Court finds *Blow* distinguishable from the present case. In *Blow,* the plaintiffs *excessively* used the "and/or" conjunction to such a degree that "[t]he Court [was] unable to determine which facts the Plaintiffs intend[ed] to support which claims for relief, which facts support[ed] claims in the alternative, and which facts must be read together in concert to support a particular claim." *Blow*, 2023 U.S. Dist. LEXIS 17373, at *4 (stating that plaintiffs' complaint contained "sixteen uses of 'and/or' in a single paragraph [and] a list of ten separate potential breaches of duty the Plaintiffs allege make Carnival liable on a theory of negligence, all separated by the 'and/or' construction"). Plaintiffs use of the "and/or" conjunction does not create confusion to the degree that the Court "is unable to determine which facts the Plaintiffs intend to support which claims for relief, which facts support claims in the alternative, and which facts must

be read together in concert to support a particular claim." *Id.* The phrase is primarily used in paragraphs 51 and 52 to enumerate the ways in which NCL should have obtained actual knowledge of the dangerous conditions and failed in its duty to warn Plaintiffs and other passengers of these conditions. [ECF No. 1 at 12-14].

Nevertheless, NCL then argues that Count I lacks "factual allegations from which notice may be inferred [and] [i]nstead, it resorts to threadbare, formulaic allegations that recite no facts suggesting how NCL knew or should have known of the specific dangerous condition that proximately caused Plaintiffs' ATV to roll over." [ECF No. 7 at 6]. Furthermore, NCL contends that "[t]he Complaint does not even contain facts to support that Vallarta, who operated the excursion, knew about the 'hidden defect.'" [*Id.*]. I disagree. In fact, Plaintiffs has specified a number of ways in which NCL should have known. Plaintiffs allege several specific facts that "push [their] claims across the line from conceivable to plausible." *Hunter v. Carnival Corp.*, 609 F. Supp. 3d 1305, 1313 (S.D. Fla. 2022) (cleaned up) (quoting *Twombly*, 550 U.S. at 570). Plaintiffs, for instance, allege that NCL visited and participated or should have visited and participated "in the excursion as part of its initial and interim (*i.e.*, annual renewal) approval process for selecting the subject excursion to be offered to its passengers and, thus knew or should have known of the dangerous and/or defective conditions." [ECF No. 1 at 12–16]. Plaintiffs allege that NCL knew or should have known about the risk because of other excursion injuries in the industry, guest feedback and complaints, and prior injuries. [*Id.*]. Moreover, Plaintiffs allege regarding Vallarta that they "knew of the foregoing conditions causing the subject accident and did not correct them, or the condition existed for a sufficient length of time so that the excursion providers, in the exercise of reasonable care under the circumstances, and due diligence, should have learned of them and corrected them." [*Id.* at 18–19]

Drawing all reasonable inferences in Plaintiffs' favor, it is reasonable to infer that NCL knew or should have known about the unreasonably dangerous conditions in the ATV Ride excursion. *See Witover v. Celebrity Cruises, Inc.*, 161 F. Supp. 3d 1139, 1147 (S.D. Fla. 2016) ("Under *Twombly/Iqbal*'s liberal pleading standard, the Plaintiff is not required to specifically detail which policies and procedures were unsafe and how they created danger. She need only allege that there was a danger that Celebrity should or could have known about.").

Plaintiffs' allegations thus support the plausible theory that NCL should have been aware of the unreasonably dangerous conditions that the shore excursion presented. At this stage, these allegations provide enough to establish a plausible theory of NCL's liability. The allegations "raise a reasonable expectation that discovery will reveal evidence" that NCL had actual or constructive notice. *See Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008); *see also Witover*, 161 F. Supp. 3d at 1147 (quoting *Chaparro*, 693 F.3d at 1337) (noting that "the Eleventh Circuit has [] stated that arguments on the [danger's foreseeability] are 'more appropriate after discovery at the summary judgment stage or at trial.' This makes perfect sense because a passenger has few ways of determining what the cruise line knew or should have known before discovery is conducted.").

Regarding Count II, "[i]t is well-established that [cruise ships] may be liable for negligently hiring or retaining a contractor." *Smolnikar*, 787 F. Supp. 2d at 1318 (S.D. Fla. 2011). In order to establish a negligent hiring claim against a cruise ship, "a plaintiff must establish that an excursion company was incompetent or unfit to perform the work, that the [vessel owner] knew or reasonably should have known of the particular incompetence or unfitness, and that such incompetence or unfitness proximately caused [her] injuries." *Martinez*, 2021 U.S. Dist. LEXIS 4852 at *17 (internal quotations omitted). Further, "[n]egligent hiring occurs, 'prior to the time the employee

is actually hired, the employer knew or should have known of the employee's unfitness, and the issue of liability primarily focuses upon the adequacy of the employer's pre-employment investigation into the employee's background.'" *Id.* (quoting *Mumford v. Carnival Corp.*, 7 F. Supp. 3d 1243, 1249 (S.D. Fla. 2014)).

NCL argues that "Plaintiffs' Complaint fails to allege any facts regarding the inquiry NCL made into Vallarta prior to selecting them to offer excursions to its passengers. Similarly, the Complaint fails to allege how NCL was or should have been on notice of Vallarta's alleged incompetence or lack of fitness." [ECF No. 7 at 8]. Specifically, NCL contends that Plaintiff did not properly plead the count because they merely allege that NCL failed to investigate Vallarta's qualifications and credentials. The Court rejects NCL's argument.

In *Lienemann*, the complaint involved a similar allegation where plaintiff stated that Carnival had failed to "properly investigate the fitness and competency of Cruise Ship Excursions, Inc., and failed to investigate whether others had been injured during the snorkeling excursion." *Lienemann*, 2018 U.S. Dist. LEXIS 202697, at *8 (S.D. Fla. Nov. 15, 2018). The Court in *Lienemann* stated that:

> Although Carnival argues that these are 'threadbare' allegations unsupported by any facts, it is unclear how one may factually allege a failure to investigate with any more clarity. If a cruise operator has a duty to investigate but no investigation occurs, <u>those are the facts</u>. There is nothing more to say an investigation that never occurred.

*Id.* at *9–10. Similarly, in *Smolnikar*—the case NCL relies on—the complaint involved similar allegations, and the case was allowed to proceed to the summary judgment stage. *Smolnikar*, 787 F. Supp. 2d 1308; *see Lienemann*, 2018 U.S. Dist. LEXIS 202697 at *10 (quoting *Smolnikar*, Case No. 08-23549-Civ-Jordan, D.E. 43-1 at 5 (S.D. Fla. Feb. 24, 2010)) (explaining that in *Smolnikar* the plaintiff alleged that the operator of the cruise was negligent by "failing 'to investigate and/or

9

perform its due diligence in researching the [background] and safety record of [excursion operator] CHUKKA, and/or in the negligent failure to investigate the safety of the shore excursion being marketed and sold on its cruise ships to its cruise ship passengers by said co-defendant.'"). Thus, Plaintiffs' allegations that NCL failed to investigate the credentials and qualifications of Vallarta are plausible; therefore, negligent selection and hiring are well-pleaded.

NCL further contends that Plaintiffs allege facts that would have occurred after NCL selected Vallarta as an independent contractor; thus, NCL contends that those allegations are "irrelevant to the claim that NCL was negligent in selecting Vallarta for the first time." [EFC No. 7 at 9]. The Court agrees with NCL; however, Count II alleges negligent selection *and* hiring. [EFC No. 1 at 15–17]. In their Response, Plaintiffs contend NCL failed to properly investigate Vallarta in the first place. They claim the Complaint sufficiently explains "that the excursion operator was negligently selected, retained and hired, and that the cruise line knew or should have known that the excursion operator was incompetent or unfit to perform the work, and that the incompetence or unfitness proximately caused her injuries." [EFC No. 11 at 10]. NCL, in the Reply, asks the Court to dismiss Plaintiffs' retention count due to failure to address it in the Response and points as evidence to the section's title. [EFC No. 14 at 5]. Plaintiffs, however, did address retention in their Response and are correct in their contentions that Count II meets the plausibility standard.

The elements of negligent retention are the same as negligent hiring/selection; thus, "a plaintiff must allege that '(1) the agent/employee/contractor was incompetent or unfit to perform the work; (2) the employer knew or reasonably should have known of the particular incompetence or unfitness; and (3) the incompetence or unfitness was a proximate cause of the plaintiff's injury.'" *Martinez*, 2021 U.S. Dist. LEXIS 4852, at \*20 (quoting *Witover*, 161 F. Supp. 3d at

1148). The main difference between negligent hiring and negligent retention is the time in which the employer knew about the employee's unfitness. *Id.* "Negligent hiring occurs when, prior to the time the employee is actually hired, the employer knew or should have known of the employee's unfitness . . . ." *Martinez*, 2021 U.S. Dist. LEXIS 4852, at *21 (internal quotations omitted). On the contrary, "[n]egligent retention occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge, or reassignment." *Id.* (internal quotations omitted).

> Plaintiffs allege in the Complaint that:
>
> NCL knew or reasonably should have known that the tour operator, VALLARTA was incompetent or unfit to conduct the subject excursion as:
> a. The ATV rides were not properly equipped with safety equipment;
> b. Other passengers were injured on the subject ATV rides;
> c. NCL received complaints from previous passengers about incompetent and/or unfit and unsafe operation of the subject ATV rides;
> d. NCL was told by its passenger(s) that they suffered injuries, and/or near miss and/or harrowing incidents during the subject ATV rides as a result of the operator's negligent operation of the subject excursion;
> e. NCL reviewed complaints of prior passengers that posted on the internet, including its own websites, industry and cruise websites, at its own guest relations desk, and end of cruise comment cards or as received during cruises, discussing the unreasonably hazardous conditions on the subject ATV rides, including but not limited to the tour operator's incompetent and/or unfit operation of the excursion; and/or
> f. The tour operator's provision of an inherently dangerous activity, and it's visible, discoverable and foreseeable hazards, incompetence and/or unfitness existed for a sufficient length of time so that NCL, through exercise of reasonable care and due diligence, under the circumstances, should have known these inherently dangerous circumstances, when visiting the site to ensure it is safe to sell the subject excursion to its passengers . . . .

[EFC No. 1 at 16–17]. Plaintiffs' allegations thus support the plausible theory that NCL should have been aware of Vallarta's particular incompetence or unfitness. At this stage, these allegations provide enough to establish a plausible theory of NCL's liability.

11

In sum, Plaintiffs have properly pleaded the claims for negligence and negligent selection and retention. I respectfully **RECOMMEND** that NCL's motion to dismiss Counts I and II of the Complaint be **DENIED**.

### B. Count IV Negligence Against NCL Based Upon Vicarious Liability Under An Apparent Agency or Agency By Estoppel Theory & Count V Negligence Against NCL Based Upon Joint Venture

NCL seeks to dismiss Counts IV and Count V by pointing to documents referenced by Plaintiffs in the Complaint, such as advertising materials and passenger tickets, that show the excursion was operated by independent contractors. Additionally, NCL argues that because the underlying negligence count fail, Counts IV and V should fail as well. [EFC No. 7 at 11–16]. NCL, for instance, argues that the exhibits attached to its Motion, which include NCL's FAQ page, NCL's Mexico Shore Excursions page, the Passenger Ticket Contract, and the Tour Operator Agreement between NCL and Vallarta, contradict Plaintiffs' allegations. Thus, both Counts IV and V should be dismissed. In response, Plaintiffs claim that NCL attached the four exhibits improperly as they are not central to Plaintiffs' claims. [EFC No. 11 at 3–4]. NCL argues in its Reply that the exhibits are permissible at the motion-to-dismiss stage because they are referenced in Plaintiffs' Complaint. [EFC No. 14 at 6–9].

"In general, when considering a motion to dismiss a plaintiff's complaint, 'a court may not consider anything beyond the face of the complaint and any documents attached thereto.'" *Reed*, 618 F. Supp. 3d at 1354–55 (quoting *Aronson v. Celebrity Cruises, Inc.*, 30 F. Supp. 3d 1379, 1397 (S.D. Fla. 2014) (citing *Financial Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007)). Nonetheless, there is an exception when "(1) a plaintiff refers to a document in the complaint; (2) the document is central to its claim; (3) the document's contents are not in dispute;

and (4) the defendant attached the document to its motion to dismiss." *Martinez*, 2021 U.S. Dist. LEXIS 4852, at *14.

NCL's argument fails because "courts in this district have found ticket contracts not to be central to Plaintiffs' claims when the claims are based in tort rather than contract." *Reed*, 618 F. Supp. 3d at 1355; *see Adams v. Carnival Corp.*, 482 F. Supp. 3d 1256 (S.D. Fla. 2020) (holding that the disclaimers on the cruise ship website stating that independent contractors carry out all shore excursions were insufficient to dismiss the apparent agency claim). In addition, a split exists in the caselaw regarding "whether an agreement between a cruise ship company and an excursion operator may be sufficiently 'central' to a plaintiff's joint venture theory of negligence, and thus should be considered on a motion to dismiss." *Pucci v. Carnival Corp.*, 146 F. Supp. 3d 1281, 1292 (S.D. Fla. 2015); one court held that:

> The Tour Operator Agreement is not necessarily central to Plaintiffs' negligence-liability-by-way-of-joint-venture theory. A joint venture, like a partnership, can be created by express or implied contract . . . [s]o, while the Tour Operator Agreement specifically states that *it* does not constitute a joint venture, a subsequent course of conduct may have created such a joint venture agreement, and the Amended Complaint only references an "agreement."

*see Ash v. Royal Caribbean Cruises Ltd.*, No. 13-20619-CIV-GOODMAN, 2014 U.S. Dist. LEXIS 164691, at *23 (S.D. Fla. Nov. 25, 2014); *but see Zapata v. Royal Caribbean Cruises, Ltd.*, No. 12-21897-Civ-COOKE/TUR, 2013 U.S. Dist. LEXIS 43487, at *16–17 (S.D. Fla. Mar. 27, 2013) (finding that "Plaintiff, however, has placed the agreement at the center of its joint venture claim . . . [and] [t]he unambiguous language of the Tour Operator Agreement directly contradicts Plaintiff's allegations and warrants the dismissal of Plaintiff's joint venture claim against RCCL.").

This Court finds that Plaintiffs only mention the Passenger Ticket Contract in passing and base their apparent agency claims on NCL's marketing and advertising of the shore excursion.

13

[EFC No. 1 at 2, 20–22]. Moreover, just as in *Ash*, Plaintiffs here refer to an "agreement" but do not specifically mention the Tour Operator Agreement or even that the agreement was a written one. Thus, this Court will not consider the exhibits attached to the Motion to Dismiss and will only look at the facts contained in Plaintiffs' Complaint to determine if the counts for apparent agency and joint venture were sufficiently pleaded.

In order to plead a negligence claim based on an apparent agency theory, the complaint must allege "(1) the principal made some sort of manifestation causing a third party to believe that the agent had authority to act for the benefit of the principal; (2) that such belief was reasonable; and (3) that the plaintiff reasonably acted on such benefits to his detriment." *Adams*, 482 F. Supp. 3d at 1269. Further, "absent any statutory mandate to the contrary, the existence of an agency relationship is a question of fact under the general maritime law." *Franza*, 772 F.3d at 1235–36.

Plaintiffs' Complaint alleges certain conduct by NCL that led them to reasonably conclude that Vallarta had the authority to act for the benefit of NCL. [EFC No. 1 at 20]. That conduct included: NCL advertising the excursion on different media forms, NCL having an excursion desk on the ship which offered, sold, provided information to, and answered passengers' questions "about the subject excursion without effectively disclosing to Plaintiffs that said excursion was being run by another entity and/or entities;" and NCL recommending Plaintiffs not engage in excursions, tours, activities not sold through NCL, since NCL has no familiarity with other tours or their operations, "despite the ready availability of the same excursions once passengers arrive at the port of call or before over the internet, often at lower prices, solely to protect NCL's profits." [EFC No. 1 at 20–21]. At this stage, these allegations are sufficient to establish a plausible theory of NCL's liability; therefore, Count IV should not be dismissed. *See Gayou v. Celebrity Cruises, Inc.*, No. 11-23359-Civ, 2012 U.S. Dist. LEXIS 77536, at *27 (S.D. Fla. June 5, 2012) ("Moreover,

14

even if the Complaint merely pleaded that 'Celebrity allowed the shore excursion operator to represent itself as Celebrity's agent,' see Mot. at 16, a claim for apparent agency would not necessarily be foreclosed, if supported by underlying facts."). Further, because this Court finds that Plaintiffs properly pleaded negligence, NCL's argument that Count IV must be dismissed because the underlying negligence claim fails is without merit.

On the other hand, a plaintiff alleging a joint venture theory of negligence liability "must plead facts showing: '(1) a community of interest in the performance of a common purpose; (2) joint control or right of control; (3) a joint proprietary interest in the subject matter of the venture; (4) a right to share in profits; and (5) a duty to share in any losses which may be sustained.'" *Ash*, No. 13-20619-CIV-GOODMAN, 2014 U.S. Dist. LEXIS 164691, at *21 (S.D. Fla. Nov. 25, 2014) (quoting *Lapidus v. NCL Am. LLC*, No. 12-21183, 2012 U.S. Dist. LEXIS 82720, 2012 WL 2193055, at *6 (S.D. Fla. June 14, 2012)).

In this case, Plaintiffs allege a joint venture existed between NCL and Vallarta where they had "a common purpose: to sell and operate the subject ATV excursion for a profit" with NCL overseeing "arrangements, marketing, and sales of the excursion, and distribution of excursion tickets onboard its vessels" while Vallarta "had control over the day-to-day working of the excursion." [EFC No. 1 at 23]. Furthermore, the Complaint alleges that the profit from the excursion was then split between the two, that they would share profits and losses and intended to create a joint venture. [*Id.* at 23–24]. These allegations are plausible enough to sustain a joint venture theory of negligence liability. Moreover, because this Court finds that Plaintiffs adequately pleaded negligence, NCL's argument that Count V must be dismissed because the underlying negligence claim fails is without merit.

In sum, Plaintiffs have properly pleaded the claims for negligence based upon vicarious liability under apparent agency or agency by estoppel and joint venture. I respectfully **RECOMMEND** that NCL's motion to dismiss Counts IV and V of the Complaint be **DENIED**.

## V.     Conclusion

In all, Counts I–V's allegations "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Plaintiffs have met their burden, and NCL is not entitled to dismissal pursuant to Rule 12(b)(6). I respectfully **RECOMMEND** that NCL's Motion to Dismiss the Complaint [ECF No. 7] be **DENIED**.

Objections to this Report may be filed with the district judge within **FOURTEEN** (14) days of receipt of a copy of the Report. Failure to timely file objections will bar a *de novo* determination by the district judge of anything in this Report and shall constitute a waiver of a party's "right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1; *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020); 28 U.S.C. § 636(b)(1)(C).

**SIGNED** this 27th day of November, 2023.

LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

**cc:** All Counsel of Record

16